# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>KISSA T. OWENS,<br><br>      Debtor | Chapter 13<br>Case No. 18-30473-EDK |
| KISSA T. OWENS,<br><br>      Plaintiff<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC,<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, as Trustee for Morgan Stanley<br>ABS Capital Inc. Trust 2006-HE4, Mortgage<br>Pass-Through Certificates, Series 2006-HE4,<br><br>      Defendants | Adversary Proceeding<br>No. 18-3025-EDK |

## **MEMORANDUM OF DECISION**

I. FACTS AND TRAVEL OF THE CASE

On January 26, 2006, Kissa T. Owens, the plaintiff in this adversary proceeding and debtor in the underlying chapter 13 case (the "Debtor"), borrowed funds from Custom Mortgage Solutions ("Custom Mortgage") to purchase her residence in Springfield, Massachusetts (the "Property"). In connection with that borrowing, the Debtor executed two promissory notes – the first in the amount of $153,520 (the "First Note") and the second in the amount of $38,380 (the "Second Note"). To secure repayment of the notes, the Debtor also executed two mortgages in

1

favor of Mortgage Electronic Registration Systems ("MERS"), as nominee for Custom Mortgage (the "First Mortgage" and "Second Mortgage").  The Notes and Mortgages were subsequently assigned to Deutsche Bank National Trust Company ("Deutsche") and were initially serviced by America's Servicing Company ("ASC"), a division of Wells Fargo (together, "Wells Fargo").[1] The Debtor defaulted in April 2007 and, according to the Debtor, the First Note was accelerated in May 2007.  In December 2007, ASC foreclosed on the Property on behalf of Deutsche.  However, Deutsche was not the holder of record of the First Mortgage at the time of the foreclosure and the sale was rescinded.

From the record before this Court, it is unclear what exactly occurred regarding the Notes, the Mortgages, and the Property until January 2014, when the Debtor received a notice from Wells Fargo informing her that the Second Note and Second Mortgage were being forgiven and released (the "discharge notice").  That notice specifically referred to the Debtor's "secondary mortgage," Ex. A, Debtor Opp., Aug. 29, 2019, ECF No. 28, and the Debtor understood the substantive import of the discharge notice – that the Second Note and Second Mortgage were being released against the Property – and the fact that it did not apply to the First Note and First Mortgage.  Feb. 22, 2019 Dep. 39:9-40:8, Def. Mem., Exhibit 8, July 30, 2019, ECF No. 17 ("Feb. 22 Dep.").  According to the Debtor, on receipt of the discharge notice, she called Wells Fargo (d/b/a ASC) on January 16, 2014 to "make sure that her understanding was correct and that its contents were true."  Debtor Opp. at 2.  During that call, the Debtor claims, she was told that the balances on both the First *and* Second Notes and Mortgages were forgiven.  Because the Debtor understood the discharge notice as referring only to the Second Note and Second Mortgage, the Debtor did not initially believe

---

[1] When discussing relevant interactions with and communications from the entity servicing the loans, the parties have largely referred to "Wells Fargo," even where communications were sent by ASC.  The Court will also adopt this convention and will routinely refer to "Wells Fargo" when referencing communications from or with ASC.

2

what she was being told and repeatedly asked for confirmation. When the Debtor asked why she had not received paperwork related to the First Note and First Mortgage, as she had for the Second Mortgage, the Debtor testified that she was told "it was going to take some time to get the documents prepared . . . ." Debtor Opp. at 2. The Wells Fargo representative then indicated that the Debtor may continue to receive statements or correspondence related to the First Note and First Mortgage, but that Debtor should disregard them because they were forgiven.

Despite the oral representations allegedly made by Wells Fargo on the January 2014 call, the Debtor testified that she sporadically received monthly statements from Wells Fargo and/or ASC in 2014 and 2015. And, at deposition, although the Debtor testified that she could not recall receiving specific documents related to the First Note and First Mortgage that were presented to her, she acknowledged generally that she had received other documents indicating that the Debtor was delinquent on payments on the First Note and First Mortgage through 2014 and early 2015. Feb. 22 Dep. 47:19-48:5; Feb. 22 Dep. 51:6-13.

Several months later, in September 2014, the Debtor received a sizeable jury award for damages resulting from the death of her son (over $300,000). According to the Debtor, because she had been told that the First Note and First Mortgage had been released and discharged, she did not use the funds to pay off or cure the arrears on the First Note and First Mortgage. Instead, without calling Wells Fargo to inquire about the status of the First Note and First Mortgage, Dep. 51:14-15, she used the funds to purchase vehicles for herself and family members, took vacations, and paid for substantial home renovations. The majority of the funds were spent from late 2014 through 2015.

It was not until February 2016, more than two years after the Debtor says she was told that the First Note and First Mortgage were released and discharged that the Debtor finally reached out

3

to Wells Fargo again. According to the Debtor, it was on a February 2016 phone call that she first learned that the First Note and First Mortgage were still due and owing. Thereafter, in 2018, Deutsche recommenced foreclosure efforts, which efforts were stayed by the Debtor's filing of a voluntary petition under Chapter 13 of the United States Bankruptcy Code.[2] The Debtor then proceeded to file this adversary proceeding against Deutsche and its servicer, Specialized Loan Servicing, LLC ("Specialized Loan"), which had begun servicing the First Note and Mortgage loan in 2017 (together, the "Defendants"). Through the adversary proceeding, the Debtor essentially seeks a declaration that Deutsche is prohibited from enforcing the First Note and First Mortgage on equitable estoppel and statute of limitations grounds and seeks affirmative damages against Deutsche and Specialized Loan for violations of the Massachusetts consumer protection statute, Mass. Gen. Laws chapter 93A ("Chapter 93A"). The Defendants have moved for summary judgment as to all counts of the complaint.

II.     POSITIONS OF THE PARTIES

    **A. Equitable Estoppel**

In Count I of the complaint, the Debtor asserts that the Defendants should be equitably estopped from asserting that any balance is owed on First Note and First Mortgage because the Debtor was told by a Wells Fargo representative that the loan and mortgage had been forgiven. And, in reliance on that representation, the Debtor says she spent substantial sums of money to renovate her home that otherwise would have been used to pay off the First Note and First Mortgage.

---

[2] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

4

The Defendants dispute that the Debtor was ever told by a Wells Fargo representative that the First Note and First Mortgage had been forgiven.  More importantly, however, the Defendants argue that even if the Debtor's allegations are true, her reliance on those oral statements was not reasonable, as she acknowledged continued receipt of correspondence indicating that the First Note and First Mortgage were delinquent and the Debtor never received any documentation regarding a discharge of the First Note and First Mortgage, as she had for the second.  Having received no confirmation of the alleged oral statements made by the Wells Fargo representative, the Defendants assert that the Debtor had a duty to engage in due diligence to determine the status of the First Note and First Mortgage before spending funds she says otherwise would have been used to satisfy that obligation.

In response, the Debtor maintains that there are a genuine issues of material fact precluding summary judgment regarding the substance of the January 2014 call and the reasonableness of the Debtor's reliance.

### B. Declaratory Judgment: Mass. Gen. Laws ch. 106, § 3-118

Through Count II of the complaint, the Debtor asks for a declaratory judgment that the First Note is no longer enforceable pursuant to Mass. Gen. Laws ch. 106, § 3-118.  The Debtor argues that because the First Note was accelerated in 2007, the six-year limitation under that statute bars collection on the First Note.  The Defendants reply that, under Massachusetts law, the First Note is an installment contract; accordingly, the statute of limitations has not run on enforcement of the First Note, because each continuing failure to make a monthly payment when due gives rise to a separate cause of action.  In addition, the Defendants say that the Debtor's acknowledgement of the existence of the debt within the last six years precludes reliance on the statute of limitations.

**C. Declaratory Judgment: Mass. Gen. Laws ch. 260, § 33**

In Count III of the complaint, the Debtor seeks a declaratory judgment that the enforcement of the First Mortgage is barred by the five-year statute of limitations set forth in Mass. Gen. Laws Ch. 260, § 33. Under the Debtor's theory, the acceleration of the First Note in 2007 also accelerated the maturity date of the First Mortgage, rendering it no longer enforceable.

The Defendants rely on recent case law for the well-established principle that, even if the First Note is no longer enforceable as a personal liability of the Debtor, the inability to recover directly on a note is not a bar to enforcement of a valid mortgage. Moreover, under that same case law, the Defendants note that the courts have uniformly held that the acceleration of a promissory note does not result in the acceleration of the maturity date set forth in a related valid mortgage.

**D. Count IV: Chapter 93A**

Through Count IV of the Complaint, the Debtor seeks damages under Chapter 93A for the Defendants' alleged "unfair or deceptive acts or practices." According to the Debtor, (1) the representation by the Wells Fargo representative that the First Note and First Mortgage were forgiven (when, in reality, they were not), (2) the attempt to foreclose on the Property when enforcement of the First Note was barred by the statute of limitations, and (3) the attempt to foreclose when the right to enforce the First Mortgage was barred by the statute of limitations each constitute an unfair or deceptive practice within the meaning of Chapter 93A.

As to the statute of limitations arguments, the Defendants say that the Debtor cannot recover damages under Chapter 93A, because enforcement of the First Note and First Mortgage are *not* barred by the relevant statute of limitations. Moreover, with regard to the alleged misrepresentations, the Defendants note that those representations were made by Wells Fargo and not by either of the named Defendants. And while, as assignee of the First Note, Deutsche agrees

6

that it is subject to the same defenses the Debtor could have raised against Wells Fargo, it maintains that the Debtor cannot affirmatively recover damages against the Defendants based on Wells Fargo's conduct, even if the allegations were true.

III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment as to a particular claim or defense should be granted if after "examin[ing] the entire record 'in the light most flattering to the nonmovant and indulg[ing] all reasonable inferences in that party's favor,'" *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997) (quoting *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994)), the Court finds "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.

"'[M]aterial' facts are those which possess 'the capacity to sway the outcome of the litigation under the applicable law.'" *Cadle Co.*, 116 F.3d at 960 (quoting *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)). While there is clearly a dispute as to the existence and substance of the January 2014 phone call between the Debtor and a Wells Fargo representative, for the reasons set forth below, the Court ultimately finds that that factual dispute is not, in the end, material to the outcome of this case.

### B. Equitable Estoppel

Under Massachusetts law, "[c]ircumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Sullivan v. Chief Justice for Administration*

*and Management of the Trial Court*, 858 N.E.2d 699, 711 (Mass. 2006) (quoting *Bongaards v. Millen*, 793 N.E.2d 335 (Mass. 2003)). While the Debtor is correct that the reasonableness of reliance is often a question of fact, *Marram v. Kobrick Offshore Fund, Ltd.*, 809 N.E. 2d 1017, 1031 (Mass. 2004), "in some circumstances a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law," *id.*

Here, even assuming the Debtor's recollection of the January 2014 phone call is accurate, and she was indeed told that the First Note and First Mortgage were being forgiven and discharged, the Court finds, as a matter of law, that the Debtor's reliance on that statement in deciding to dissipate funds that she otherwise would have used to pay off the First Note and First Mortgage was unreasonable. The Debtor excuses her lack of further follow up and confirmation on the advice of the Wells Fargo representative to disregard subsequent written communications. What is patently unreasonable, however, was for the Debtor to choose to spend large sums of money that (according to her) she would have used to satisfy the First Note and First Mortgage many months after the initial oral representation, having continued to receive written evidence of the bank's assertion that the First Note and First Mortgage remained in force, and without first contacting Wells Fargo for further written confirmation that the obligation was discharged.

"Where a written statement conflicts with an oral statement, Massachusetts law assumes that a reasonable person will investigate further." *McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 39 (1st Cir. 1998); *see also Marram*, 809 N.E. 2d at 1031 (collecting cases). The Debtor admitted that she understood the importance of such written evidence regarding the Second Note and Second Mortgage. Having failed to even attempt to confirm the discharge of the First Note and First Mortgage in late 2014 or early 2015 after receiving several written communications contradicting the January 2014 oral representations, the Court rules, as a matter of law, that any

8

reliance on the January 2014 representation in her decision not to use available funds to pay the First Note and First Mortgage was unreasonable. Accordingly, summary judgment will enter in favor of the Defendants on Count I of the complaint.[3]

### C. Statutes of Limitations

Massachusetts General Laws ch. 106, § 3-104 sets forth a six-year statute of limitations applicable to the First Note. The Defendants are correct that, as an installment contract, "the statute of limitations for the recovery of each installment under the note begins to run from the time it becomes due." *Berezin v. Regency Sav. Bank*, 234, F.3d 68, 73 (1st Cir. 2000). However, according to the Debtor, the Defendants' "installment contract" theory is inapplicable because the six-year limitation began to run upon acceleration of the note in 2007. But the Debtor's pleadings in response to the Defendants' summary judgment motion suffers a fatal flaw – despite ample time for discovery (and the deadline for discovery having long passed), the Debtor failed to produce any evidence that the First Note was accelerated in 2007.

The Debtor also argues that the First Mortgage is barred by the five-year statute of limitations set forth in Mass. Gen. Laws ch. 260, § 33, because the acceleration of the First Note resulted in an acceleration of the February 2036 maturity date set forth in the First Mortgage. However, as many courts have repeatedly held, "there is no suggestion" in either Mass. Gen. Laws ch. 260, § 33 or in case law from the Massachusetts Supreme Judicial Court "that the acceleration of a note has any impact on the limitations period for a mortgagee's right to foreclose." *Harry v. Countrywide Home Loans, Inc.*, 902 F.3d 16, 19 (1st Cir. 2018). Even if the First Note was accelerated in 2007, that acceleration had no impact on the February 2036 maturity date set forth

---

[3] While the Defendants also argued in their reply brief that any alleged discharge of the First Note and First Mortgage, having been made orally, is barred by the statute of frauds, Mass. Gen. Laws ch. 259, § 1, that argument is irrelevant to the present facts, as the Debtor has not alleged that there was an oral "contract" between the parties as referenced in that statute.

9

in the First Mortgage. Nor would the inability of the Defendants to enforce the Debtor's personal liability under the First Note impact the ability to recover on the First Mortgage; "[t]he SJC has repeatedly held over the last 180 years that, at both law and equity, the inability to recover directly on a note due to the expiration of a statute of limitations is no bar to recovery under a mortgage, so long as the underlying debt remains unpaid." *Fortin v. Federal Nat'l Mortgage Ass'n*, 598 B.R. 689 , 692 (Bankr. D. Mass. 2019) (collecting cases).

Accordingly, the Court will grant summary judgment in favor of the Defendants on Counts II and III of the complaint.

### D. Chapter 93A

Because the Court has determined that summary judgment on both statute of limitations claims will enter in favor of the Defendants, the Court likewise rules that the Debtor's allegation that the Defendants engaged in unfair and deceptive acts within the meaning of Chapter 93A by attempting to enforce the First Note and First Mortgage despite being barred by the statute of limitations from doing so also fails.

And the Debtor's attempt to hold the Defendants affirmatively liable under Chapter 93A for the alleged misrepresentations made in the January 2014 phone call are clearly foreclosed. The Debtor admits that the statements were made by Wells Fargo or its representatives and not by either of the Defendants named in this adversary proceeding. Specialized Loan, as servicer for Deutsche, has no alleged relationship with Wells Fargo, and, as loan servicer "cannot be charged with liability for the misconduct of a loan originator or lender with whom it had no relationship." *Creutz v. U.S. Bank. Nat'l Ass'n*, 2018 WL 2733942, *4 (Bankr. D. Mass. June 5, 2018) (citing *Drakopoulos v. U.S. Bank N.A.,* 991 N.E. 2d 1086, 1092 n.12 (Mass. 2013)).

As for Deutsche Bank, affirmative relief under Chapter 93A for acts perpetrated by Wells Fargo is also barred; "[w]here an assignee played no part in the unfair or deceptive acts of an assignor, principles of assignee liability ordinarily will not render the assignee liable for affirmative damages for those acts." *Drakopoulos*, 991 N.E. 2d at 1095 n. 16.

Accordingly, the Court will enter summary judgment in favor of the Defendants on Count IV of the complaint.

IV.    CONCLUSION

For all the foregoing reasons, the Court rules that enforcement of the First Note and First Mortgage are not barred by principles of equitable estoppel or applicable statutes of limitation and the Defendants cannot be held affirmatively liable under Chapter 93A for statements alleged to have been made by an entity not a party to this proceeding.  Summary judgment will be entered in favor of the Defendants on each count of the complaint.  An order and judgment consistent with this Memorandum will issue forthwith.

DATED: December 11, 2020            By the Court,

                                                            _____
                                                            Elizabeth D. Katz
                                                            United States Bankruptcy Judge

11